Dear Mr. Decuir:
You have submitted a request for an Attorney General's Opinion asking our office to address several issues concerning the powers, duties, and responsibilities of the Management Boards for State Colleges and Universities.
At the outset, we must first examine the origin of the Board of Regents and the Board of Trustees and their corresponding duties and responsibilities. The Board of Regents is created in the Louisiana Constitution Article VIII, Section 5(A) which provides:
 "Section 5. (A) Creations; Function. The Board of Regents is created as a body corporate. It shall plan, coordinate, and have budgetary responsibility for all public higher education and shall have other powers, duties, and responsibilities provided in this Section or by law."
The Board of Regents shall have the following powers, duties and responsibilities as designated in the Louisiana Constitution Section 5(D) which provides:
 (1) "To revise or eliminate an existing degree program, department of instruction, division, or similar subdivision.
 (2) To approve, disapprove, or modify a proposed degree program, department of instruction, division, or similar subdivision.
 (3) To study the need for and feasibility of any new institution of post-secondary education, including branches of institutions and conversion of two-year institutions offering longer courses of study. If the creation of a new institution, the addition of another management board, or the transfer of an existing institution from one board to another is proposed, the Board of Regents shall report its written findings and recommendations to the legislature within one year. Only after the report has been filed, or, after one year if no report is filed, may the legislature take affirmative action on such a proposal and then only by law enacted by two-thirds of the elected members of each house.
 (4) To formulate and make timely revisions of a master plan for higher education. As a minimum, the plan shall include a formula for equitable distribution of funds to the institutions of higher education.
 (5) To require that every higher education board submit to it, at a time it specifies, an annual budget proposal for operational needs and for capital needs of each institution under the control of each board. The Board of Regents shall submit its budget recommendations for all institutions of higher education in the state. It shall recommend priorities for capital construction and improvements."
As set forth in the LSA-R.S. 17:3128(A):
 "The Board of Regents shall have the power to formulate and make timely revision of a master plan for higher education. As a minimum, the plan shall include a formula for equitable distribution of funds to the institutions of higher education. The Board shall submit its recommended plan and recommended formula for funding to the governor, the legislature, and the management boards for institutions of higher education."
LSA-R.S. 17:3128(B) provides that:
 "In cooperation and agreement with each higher education management board, the chancellor, and the president of each public institution of higher education, the Board of Regents shall devise, describe, and establish a mission for each public university system and for each institution within each system."
 The Board of Regents has the power to make budget recommendations to the Governor and to the legislature for all institutions of higher learning in the state, including priorities for capital construction and improvements.
The Louisiana Constitution Article VIII Section 5(E) states that:
 "Powers Not Vested. Powers of management over public institutions of higher education not specifically vested by this Section in the Board of Regents are reserved to the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, the Board of Supervisors of Southern University and Agricultural and Mechanical College, the Board of Trustees for State Colleges and Universities, and any other such board created pursuant to this Article, as to the institutions under the control of each."
A similar provision is stated in LSA-R.S. 17:3130.
LSA-R.S. 17:3351 sets forth the general powers, duties and functions of the Management Boards. As provided in the statute, subject only to the powers of the Board of Regents specifically, enumerated in Article VIII, Section 5(D) of the Constitution of the State of Louisiana of 1974, and as otherwise provided by law, each management board as a body corporate shall have authority to exercise all power to direct, control, supervise and manage the institution of higher education under its control. The statute sets forth a list of duties and functions given to the Board of Trustees that is only illustrative at best.
Art. VIII, § 6 and 7 create the Board of Trustees for State Colleges and Universities, and the Boards of Supervisors for LSU and Southern University, and grants to these management boards sovereignty over the management of their respective university systems subject only to the powers vested by Article VIII in the Board of Regents.
Thus, while the Board of Regents may properly require the submission of revised budgets reflecting a proposed allocation and expenditure of appropriated funds, it may not interfere with the management or administration of such funds. The proper sphere of the Board of Regents' authority is limited to assuring that the funds are expended consistent with the law by which they were appropriated and the general plan or scheme for higher education formulated by the Board of Regents.
This is further expressed in Article VIII, § 12:
 Appropriations for the institutions of higher education shall be made to their managing boards. The funds appropriated shall be administered by the managing boards and used solely as provided by law.
There is an obvious division of power among the two levels of authority. The statewide Board of Regents is designed to make discretionary policy decisions. The Managerial Boards are to perform the ministerial, day-to-day operations. Neither can interfere with the other's duties unless the law explicitly allows. Thus, if no violation in spending the allotted funds occurs, the Board of Regents cannot take action and no overlap of duties regarding this issue results.
The Managerial Boards' administrative abilities come into play once the distribution of funds among functional categories consistent with the Board's plans is approved by the legislature. The day-to-day operations, supervision, or management of the course of affairs within each Managerial Board's jurisdiction are not to be interfered with by the Board of Regents.
Thus, subsequent to the appropriations by the Legislature, the internal allocations of funds among the various functional categories is a matter properly reserved to the supervisory and management functions of the Management Boards in accordance with the Legislative Appropriations Act and Budgetary Constraints, Art. VIII, § 12. Grace v. Bd of Trustees for State Colleges Universities, 442 So.2d 598, 601 (La.App. 1 Cir. 1983). Further, Management Boards have the authority to adopt rules and regulations governing the internal management of the universities within their jurisdictions without legislative consent or approval. Id.
You have requested an opinion regarding the exclusivity of the Board of Trustee's authority to perform such functions as:
(a) the purchase of land for university use;
 (b) to enter into lease for buildings or equipment to be used in the university program;
 (c) to establish or set salaries for university officials, faculty, and staff; and
 (d) to authorize maintenance projects to repair or maintain university buildings or property when the amount of said project is below the threshold amount for capital outlay projects.
Additionally, you have asked "whether or not the responsibility for planning capital outlay or implementing capital outlay projects once funded by the Legislature is vested within the Management Boards or the Board of Regents."
The Board of Trustees is given the general power to perform the functions as set forth in (a — d) as provided in LSA-R.S.17:3351 A(6-10). As previously discussed, every higher education board must submit to the Board of Regents an annual budget for operational needs and for capital needs of each institution under the control of each board. The Board of Regents then submits its recommendations to the Legislature who in turn appropriates funds to the managing boards individual institutions Art. VIII § 12. As indicated in Attorney General Opinion Number 76-1013, (pg. 9) "in the event that the Legislature appropriates more or less than the amount requested by the Board for any institution, the Board, in exercising `budgetary responsibility' may require any such institution to submit to it for review and approval and [sic] amendment, if it sees fit, a revised budget of the funds actually appropriated by the Legislature to such institution."
The opinion continues by saying,
 "After the Legislature has appropriated funds to an institution in an amount equal to the amount budgeted and requested for that institution by the Board, or once the Board has approved a revised budget of the funds actually appropriated by the Legislature to any institution, the institution may expend those funds in accordance with the approved budget without added board approval so long as expenditures are kept within the line items in the budget approved by the Board so long as it does not institute or modify a "degree program, department of instruction, division or similar subdivision." Constitution Article VIII, Sec. 5(D)2." (Emphasis added)
However, the Board of Regents is accountable for the expenditure of these funds as discussed in Attorney General Opinion Number 76-1013 (pg. 90) which states:
 "Accountability for the expenditure of public funds by a state and its agencies is fundamental in our law. The legislative budget committee has always exercised this obligation to insure that public funds appropriated are spent in accordance with legislative will."
In Attorney General Opinion Number 76-1013A, our office clarified that "the final responsibility as to the funds expended for public higher education rests with the legislature."
Therefore, the Managerial Board/Board of Trustees has the authority to implement all of the functions as listed in (a — d). The only limitation applicable is that no expenditure within each category exceed the amount prescribed by the Legislative appropriation. Further, the transfer of funds between categories would not be lawful since such would be a direct violation of Article VIII, § 15(D)4.
The constitutional provisions empowering the management boards to manage their respective university systems also imposes a constitutional and legal duty to implement and facilitate the educational goals of their public institutions. Guste v. Nicholls College Foundation, 564 So.2d 682 (La. 1990). Funds expended to actualize the bona fide educational objectives of a university, and the employment of an excellent faculty, must be considered as core objectives, and are constitutionally justified by the legal obligation of the university to perform "its constitutional and legal duties in public education." Id. at 688.
The functions at issue above are consistent with the spirit of the decision as stated in Attorney General Opinion No. 90-249:
 The power of the management boards to determine the terms of compensation for faculty, staff, and other academic professionals is constitutionally authorized. The boards are further legally obligated to provide a schedule of professionally acceptable compensation for faculty and others so that the state colleges and universities may fulfill their constitutional purpose of public education at the post-secondary level. Art VIII, preamble, § 1." (Emphasis added).
Additionally, in Attorney General Opinion Number 76-961, a request was made as to "[w]hat authority, if any, does the Board of Regents have to review the athletic contracts of institutions under the control of a management board. The author of the opinion indicated that the Board of Regents has the authority to review the athletic contract of an institution under the control of a management board. However, the author continued by saying:
 "The letting of an athletic contract involves the expenditure of state education funds. If such contract, for example, creates such an imbalance that it effects [sic] the total education budget of that institution then it becomes the duty and responsibility of the Board of Regents to coordinate it with the total education program as part of its budgetary responsibility."
Therefore, the authority of the Board of Regents to prohibit a university from entering into such contracts is limited.
Additionally, you have asked "whether or not the responsibility for planning capital outlay or implementing capital outlay projects once funded by the Legislature is vested within the Management Boards or the Board of Regents." Once funds have been appropriated by the Legislature, it is the obligation of the Management Boards to plan and spend the funds appropriately. However, if a project exceeds a hundred fifty thousand dollars ($150,000.00), for which funds have not been appropriated by the Legislature, that is classified as a capital outlay project and approval of the Board of Regents and the appropriate Management Board is required as provided for in LSA-R.S. 17:3383 and in accordance with the Appropriations Act. LSA-R.S. 17:3383 states the following:
 "Minor repairs or construction of buildings or other facilities, costing less than one hundred fifty thousand dollars ($150,000.00) may be undertaken by or on the campus of a state college or university without being included in the capital outlay budget but shall be subject to the approval of the Board of Regents and the appropriate management board."
Reference is further made to pertinent language contained in Attorney General Opinion No. 90-123:
 "Although the Board of Trustees are constitutionally vested with management powers, it (sic) must obey the constitutional injunction against the gratuitous alienation of public funds with no public purpose or benefit realized thereby."
The `public purpose or benefit' is apparent in the functions at issue. The Board of Trustees should, therefore, encounter no obstacle in exercising them.
I hope this opinion has sufficiently addressed your concerns. Should you have questions regarding this matter, please contact our office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
RPI:pab 0075p